739 So.2d 405 (1999)
Anthony POE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01139COA.
Court of Appeals of Mississippi.
April 20, 1999.
*406 Carter Dobbs, Jr., Amory, Attorney for Appellant.
Dewitt T. Allred, Office of the Attorney General, Attorney for Appellee.
Before THOMAS, P.J., KING, and SOUTHWICK, JJ.
KING, J., for the Court.
¶ 1. Anthony Poe was indicted along with Willie Moore, Tyrone Holliday, James Earl Parson, and Christopher Vasser, all of whom are black males, for the armed robbery and kidnaping of Patsy DeVaughn, a white female. Poe was tried separately in the Monroe County Circuit Court and convicted of both charges on September 16 and 17, 1996. He appeals, asserting five assignments of error.

*407 Facts
¶ 2. On September 15, 1994, DeVaughn was driving on Highway 45 when she ran out of gas at about 2:00 a.m. near Aberdeen, Mississippi. DeVaughn testified that she walked to the only visible house. Because no one responded, she returned to her mini-van and fell asleep. DeVaughn was awakened by headlights shining into her mini-van and saw a man outside her window. She rolled down the window a few inches and asked if the man could bring her some gas, but he displayed a pistol and forced her out of her mini-van. She observed that the shining lights came from a station wagon, and a second man was standing outside that vehicle. This second man opened a back door of the station wagon and gestured for her to get inside. She said to both of them, "[j]ust let me go back to my car." In response, they laughed. The first man with the pistol pushed DeVaughn into the vehicle. As DeVaughn sat between the two men they suggested an exchange of sex for gasoline. There were three other men in the vehicle who never spoke.
¶ 3. DeVaughn further testified that the five men drove around for a period of time. Then the car pulled over, and the man with a gun asked her if she was afraid to be in the car with all of them. She said, "Yes." And he responded, "Well, today's just not your lucky day." The man seated on her left grabbed her purse. The man with the gun then got out and told her to follow him, which she did. Outside the station wagon, he frisked her to see if she had any valuables on her person, and then told her to run. She did so and eventually came to a house from which the Monroe County Sheriff's Office was called at approximately 3:00 a.m. At no time did DeVaughn identify Poe, or any of the other men indicted, as taking part in the robbery and kidnaping.
¶ 4. Norman Smith, a deputy sheriff, responded. DeVaughn got into his car, and they located her empty purse by the roadside. They then drove back to where her mini-van was parked. Meanwhile, Smith heard on his car radio that a white car had been stopped and individuals arrested in Okalona, Mississippi in connection with a incident similar to that reported by DeVaughn.
¶ 5. James E. Parson, Chris Vassar, and Tyrone Holliday testified, and Parson additionally gave a statement after his arrest. These three men were teenagers in high school at the time of the trial. Poe and Moore were older, in their twenties, and casual acquaintances, but not friends of the younger men. All three of the younger men identified Poe and Moore as the individuals who got out of the station wagon and approached DeVaughn's minivan.

Issues and Analysis

1. The Trial Court Refused Instructions D-1 and D-4
¶ 6. The trial court refused instruction D-1 and D-4 as repetitive. So long as a jury is fully instructed, no error attaches to a refusal to give repetitive instructions. Hull v. State, 687 So.2d 708, 722 (Miss.1997)(citing Allman v. State, 571 So.2d 244, 252 (Miss.1990); Lee v. State, 529 So.2d 181, 183 (Miss.1988); Malone v. State, 486 So.2d 360, 365 (Miss.1986)).
¶ 7. D-1 is repetitive of C-2 as they both state the single juror rule, i.e. each juror must decide the verdict for himself after consultation with the other jurors. Likewise D-4 is repetitive of C-3 on burden of proof. Poe contends the instruction he requested, D-4, contained the necessary language:
"[w]here there is a disputed issue of facts, [sic] and the testimony fails to show beyond all reasonable doubt that the State's contention in regard to that issue of facts [sic] is true, then the presumption of law controls, and the Court says to you specifically that you must find such issue in favor of the Defendant."
*408 However C-3 which was given provides a clear statement of essentially the same information:
"[t]he presumption of innocence attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of the defendant's guilt beyond a reasonable doubt."
As both C-2 and C-3 correctly instructed the jury on the points raised by Poe, this assertion of error is without merit.

2. Lesser-Included-Offense Instruction
¶ 8. While the trial court's instructions gave the jury options finding Poe guilty of either armed robbery or the lesser included-offense of robbery, a requested instruction on petit larceny was denied. Poe contends this was error because the jury could have found that no crime occurred until he and Moore took DeVaughn's purse. He contends the jury could have found that DeVaughn left her mini-van and got into the station wagon of her own free will, and was never held against her will or "in fear of immediate injury to her person." This instruction would have allowed the jury to acquit Poe of the more serious charges if the jury concluded that no crime took place until DeVaughn was forced to surrender her purse, after the station wagon had pulled to the side of the road.
¶ 9. If a hypothetical juror could find a defendant guilty of a lesser-included-offense, the instruction should be given. Mease v. State, 539 So.2d 1324, 1329-30 (Miss.1989). See also, Fairchild v. State, 459 So.2d 793, 800 (Miss.1984)(citing Knowles v. State, 410 So.2d 380, 382 (Miss. 1982); Ruffin v. State, 444 So.2d 839, 840 (Miss.1984)).
¶ 10. Poe argues that because Parson, Holliday, and Vasser testified that they did not see either Poe or Moore display the pistol to DeVaughn, the trial court should have given the lesser-included-offense instruction on petit larceny. This argument mis-states the law.
¶ 11. In order to obtain a lesser-included-offense instruction, the defense must be able to point to some evidence that positively supports the evidence, and it may not base the instruction solely upon "negative implication evidence." Ford v. State, 555 So.2d 691, 695-696 (Miss.1989). In Ford, the appellant sought an instruction based upon his contention that he may have stolen less than a hundred dollars, but the only evidence to support that contention was a bank teller's testimony that she didn't actually see the exact amount taken from her teller drawer. Thus, the appellant contended the money could have been removed by someone other than himself. Id. The supreme court held that a lesser-included-offense instruction must be supported by positive evidence. Id. Similarly, in Haddox v. State, 636 So.2d 1229 (Miss.1994), the supreme court held that when the State introduces evidence supporting the more serious charge, a defendant must positively introduce evidence rebutting the State's evidence, thereby creating an issue of fact, in order to obtain a lesser-included-offense instruction. Id. at 1239.
¶ 12. Poe introduced no evidence to directly refute that either he or Moore displayed a pistol to DeVaughn when they approached her mini-van and forced DeVaughn into the station wagon. That is, Parson, Holliday, and Vasser all agreed that they stayed inside the station wagon when Poe and Moore got out; they did not hear what was said, and while they did not observe a pistol at that time, they later saw a pistol in the station wagon. Their testimony is not the same as that of a witness who directly refutes the testimony of another witness. As such, this assignment of error is without merit.

3. Excuses For Cause
¶ 13. Poe contends that the trail court's decision to excuse for cause veniremen, Linda Thompson, Lille Mae Buckingham, and Ida Lou Brandon had a "Batson-like effect." This argument is not entirely *409 clear because the record reflects that the trial court actually excused eight veniremen, one of whom was excused at the request of Poe's attorney. Additionally, of the three veniremen whose removal Poe complains, Buckingham was white.
¶ 14. Batson claims involve only peremptory challenges, not excusals for cause. Shaw v. State, 540 So.2d 26, 27 (Miss.1989). See also, Brown v. Blackwood, 697 So.2d 763, 772 (Miss.1997). Nevertheless, Poe contends that because he is black, he is more likely to have acquaintances and relatives who are black, and who therefore are more likely to be excused for cause. However, a trial court has wide discretion in determining whether to excuse prospective jurors, including those challenged for cause. Scott v. Ball, 595 So.2d 848, 849 (Miss.1992); Berry v. State, 575 So.2d 1, 9 (Miss.1990); Burt v. State, 493 So.2d 1325, 1327 (Miss.1986). The record indicates that Thompson went to school with Poe; she was friends with Poe's brother, and in the past Poe dated her "best friend." Buckingham stated she could not "judge" Poe. Brandon's son was a first cousin to Poe. The record does not show an abuse of discretion. As such, this issue is without merit.

4. Motion For A Continuance Until the Defendant Could Be Found
¶ 15. On the first day of trial, September 16, 1996 as the trial court conducted voir dire, Poe was in attendance in the courtroom. However, at approximately 11:30 a.m. Poe left the courtroom without telling his attorney or mother where he was going or when he was returning. At sometime between 2:30 p.m. and 3:20 p.m., the trial court heard testimony from Poe's mother as to whether he could be found by the next morning, but she could not be certain as to what Poe's intentions were. The trial court then recessed until 9:00 a.m. on the following day to afford the defense an opportunity to locate Poe. The following morning, Poe could still not be found. At that time, the trial court overruled Poe's attorney's motion for a continuance until such time as Poe could be found. The trial court held Poe "waived his right to confrontation." Poe asserts the trial court erred in overruling his attorney's motion.
¶ 16. The supreme court has held that when a defendant enters an appearance in a trial court at the commencement of trial, he may be tried in absentia if he thereafter fails to attend the proceedings. Sandoval v. State, 631 So.2d 159 (Miss.1994)(citing) Crosby v. United States, 506 U.S. 255, 262, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993). See also, Jackson v. State, 689 So.2d 760, 763-68 (Miss.1997); McMillian v. State, 361 So.2d 495, 497 (Miss.1978). As Poe attended the commencement of trial, this issue is without merit.

5. Motion For A Mistrial
¶ 17. Poe contends the trial court should have granted his motion for a mistrial which was based upon his contention that the jury may have been prejudiced by the bailiff, a Monroe County Deputy Sheriff, communicating with the prosecuting attorney during voir dire. Poe cites no authority for this issue, and his brief only discusses it for only three sentences. Nevertheless, the record indicates that the bailiff sought to communicate something about one of the potential jury members to the trial judge. He relayed this information through the prosecuting attorney. There is nothing unusual or prejudicial in a bailiff communicating with a trial judge or attorneys appearing in court. Based upon the briefs and record before this court, this issue has no merit. See Drennan v. State, 695 So.2d 581, 585-86 (Miss.1997) (citations omitted).

Conclusion
¶ 18. None of the five asserted errors have merit. This case is affirmed.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY OF THE CONVICTION OF ANTHONY *410 POE OF COUNT ONE ARMED ROBBERY AND COUNT TWO THIRTY YEARS TO RUN CONSECUTIVELY WITH COUNT ONE WITH TEN YEARS SUSPENDED IN COUNT TWO IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONROE COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.